May it please the court, I'm Claude Raynaud, I'm here with my partner Carol DeVilliers and my client Wayne P. Trish who is seated in the gallery. I hope to spend the 15 minutes that I have allotted for my direct argument on two issues. The first is to address Mr. Trish's status as at most a secondary actor in the securities suit, at most. I mean we even argue that he wasn't even reaches that level. And the second, if I have time, is to address the issue of scienter. There is just no evidence in the record of any scienter and even whatever the other side argues is scienter is so attenuated in terms of a temporal element, so far removed from the alleged actions that Mr. Trish was supposed to have done that it has nothing to do with the securities case. In fact, it was trying another case. We start with only one of the many procedural issues that were raised and created by the district court. And that is in connection with our Rule 50 motion. Well, let me back up. At the jury charge conference, the judge decided that he would instruct the jury only on 10B-5 issues and using the standard Fifth Circuit instructions. We raised one objection to that and that was to include the AFCO case, which Judge Higginbotham was on that panel, which deals with reliance and attribution. I did not and we did not raise any issues regarding state law because it is our belief that state law is actually a tougher standard. And so if there is no liability under 10B-5, because we thought we were going to win, then there is no liability under state law because under state law you have to either be a seller, of which Trish clearly was not, or a control person. And Mr. Buehler, who did own AIG, who was the seller, said that Trish had no interest or control over AIG. Can you tell Judge Jackson that the jury should not be instructed on state law? They didn't need to be. The judge ruled in Chambers. That wasn't your position. I mean, the plaintiff saw your objection. He did. That was your position, right? He did, and the judge overruled that objection. So you can't change it. They are, really, but I believe that state law is even more tougher for a plaintiff to prevail because it's either a seller or it's either a control person. And that's, I think, we cited that Solow case in our brief, which is a CPA case, just like this one. Mr. Trish has been a CPA for 43 years in Baton Rouge. Very common practice in the 10b-5 suit to file the 10b-5 suit that gives you a jurisdictional hook, and then you, in 1367 now, in supplemental jurisdiction, bring in your state law claim because many of our states, Texas being one, doesn't require the senator that's required in 10b-5. But you submit a single set of Rule 49 interrogatories, but you do put the, you ask the question, separate question to the senator to meet the 10b-5 standard. Yet you get all those findings, and then when you get out of it, if you get the findings of civil fraud but you don't have a senator, then you can recover, you get a judgment on the verdict under state law. I thought that's what the trial judge was trying to do here. Well, I'm not real sure what the trial judge was trying to do, with all due respect. And this is the problem. This is the quantity. He did what you asked. I'm sorry? He did what you asked. Well, I'm fine with that. And then we filed a, well, we did three Rule 50 motions. At the end of plaintiff's case, we made a verbal motion on the record. So did Daryl DeArmond. I'm sorry, when you say I'm fine with that, you mean you're fine with him not being obliged to instruct on the elements of state law securities fraud? Again, from our perspective, my belief is that state law is a tighter standard. So if you . . . The judge, you're saying the judge was correct to say it was subsumed in the standards. So if guilty on the federal standards, then necessarily guilty on state? Is that what you're saying? I don't know about guilty, but if liable, yes. Why is state law a higher standard? I think it is. In Louisiana, it is. Okay, I understand your belief, but what is it? How is it . . . How is it tougher? Well, you know, you have the six elements under 10b-5, which are all the things you need. And then you have to be a seller under the statute 51-712-A and D. You have to be a seller. And Mr. Trish is not a seller. That's true of 10 both. It really is the same in many ways. In fact, many of the 10b-5 cases . . . What is the difference? Don't you have to prove reliance? Well, the one thing that needed to be added if state law was going to be the standard was the control person. And there's no evidence in the record that Mr. Trish was a control person. But that was the point that was so hotly contested. At least when you read the closing argument, it's all about is he in the periphery or is he an immediate controlling financier that gave concepts and ideas? So that really seemed to me exactly what you argued. Well . . . Peripheral or control? What we argued was AFCO and his lack of involvement and no attribution to him in the prospectus. That's what we argued mostly. Then we argued Sienter, which I'm going to get to, that he had no nefarious intent, no ill will, no mens rea, if you will, to do anything to these people. He didn't even know them. See, that's the remarkable thing about this. Mr. Trish is so far removed from these plaintiffs. Four of them never met him. Well, five of them never met him. One says they talked to him, but the jury really didn't believe that either. And so he's out here giving concepts at best under Mr. Buehler's guidance. The evidence was that one of the investors testified that before he moved on this thing, he wanted to know if this was the real thing. And he calls Trish, and he gets verification that this is the real thing, et cetera. Well, that is what he testified. Mr. Trish denied . . . That's evidence before the jury. Right. And, of course, the jury cut his award by $33,000. So I'm not sure why they did that. I think it's because he didn't have that prospectus when he said he made that call. I don't think the jury believed Mr. Heck completely. And the other four never even met Trish until their depositions. We don't know what the jury . . . I do not. The evidence of his participation . . . The only evidence of any kind of Mr. Trish's participation is that Heck said he made a call, in which Heck says Mr. Trish made no representations about the security, no representations about the investment, just confirmed that he was involved. Now, that's basically it. And we've quoted that testimony in our briefs. What do you want to know? He told him, yes, this is the real deal. That's more than what you're saying. Actually, to quote him, he said, is this B.S.? I think is what he said. And I apologize . . . That was the question. That was the question. The response was, this is the real deal. Well, again, that is the only element here of any contact with Trish. And does that . . . And you say there's no evidence of participation there, direct testimony that he was participating at least to this extent. Under AAFCO, there was no attribution to Trish in the prospectus. Well, but be careful about that. Maybe . . . is his name Bueller? Is that his name, Bueller? Bueller? Is that his name? Bueller. You impeached him, and there may have been a great deal to impeach him with, but he did say, and then even in his own closing said, there were other people that helped me write this. Oh. So, attribution of prospectus was a point of heated dispute. Yes. No, no, no, no. Attribution is actually under AAFCO, is naming Trish. In the AAFCO case, Proskauer was not named as a national law firm. Trish, there was only reference to a local CPA firm. So Trish . . . nobody even knew who Trish was, except for what I consider the aberrant testimony of Mr. Heck. But remember this, too. This is five different cases. These guys didn't know each other. So Heck didn't talk to McKern or Hamley or Moore or Richardson. So, I'm telling you that AAFCO is, in my view, directly on point with this. And there have been other cases. The Stone Ridge case, and then there's a more recent case, a 2011 case, which is the Janus v. Capital Group v. Derivative Traders. And that's a Supreme Court case in 2011. Let me see if I can pull this quote real quick. And it kind of is on point. This is Justice Thomas. He says, without control, a person in any case merely suggests what to say, not make a statement in its own right. One who prepares a publicist's statement on behalf of another is not its maker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And, of course, they decided for the defendants. It was a 12 v. 6 motion going up to the Supreme Court. So, my point is this. Under prevailing Fifth Circuit jurisprudence and under prevailing Supreme Court jurisprudence, Stone Ridge and Janus, Trish is too far removed for liability as a secondary actor. The only exception to that is the Heck testimony, and I think it was adequately discounted. Why do I keep coming back to, what's her name, Glaspie? Glaspie. Your objection was that, well, that's hearsay. Her indication that he helped or he was in the room, et cetera. Well, any time that Ken Buehler told Ms. Glaspie something, that is hearsay. But that's not an issue you're appealing to us. No. Ms. Glaspie is more, and I might as well switch to Scienter right now. Glaspie relates to Scienter. Glaspie said that Trish was involved in mortgaging the inventory of AIG and recommended that the inventory of AIG be mortgaged to a bank called First Bank. That raises a whole can of worms of issues. But quickly, on August 20, 2004, they did mortgage, AIG did mortgage that. Now, Mr. Trish denies that, but let's just take Ms. Glaspie's version as true. If that's the nefarious intent, meaning the inventory that had been purchased by the proceeds from the securities offering was used to purchase, I mean was used as collateral for the mortgage back in August, then you have the temporal element here lacking. Remember, Trish's contribution was concepts to the prospectus. Concepts to the prospectus. I'm quoting Buehler, not Trish. He didn't write anything. DeArmond wrote it. And Trish's testimony is, yeah, I met with Buehler, but he didn't really know that Buehler was going to use anything Trish said to put into this document. And that is really consistent with the testimony. If you look at some of the cases on temporal of the Huddleston case, Alvin Rubin wrote the opinion. He said, you have to have the Scienter or the intent at the time of the action complained of by the plaintiffs. That's in Huddleston. Then we have the Flaherty case, and I think, Judge Clement, you were in the Flaherty panel. I think it was eight days between an offering and a dividend. It was a tender offer for some shares. This was a case where people sold shares, tender offer, and eight days later a dividend was declared and those people didn't have the shares anymore. The judge in that case, I don't think he wrote the opinion, Judge Clement, said that eight days was not enough. So, again, what Mr. Trish supposedly had done, even under Buehler's view, who, by the way, was paid off to do this by getting his license back, was supposedly to contribute concepts to this prospectus. That was at least, the prospectus was finished in January of 2004. That would have occurred in, let's say, November, December of 2003 and 2004, and the thing that Mr. Trish would supposedly have done bad was in August of 2004 where they needed a loan, $350,000 for the line of credit, and they pledged their inventory. That is re-arguing your closing, right? My client, two peripheral, timeline doesn't work, and purchase testimony. Okay, but our standard then is could no reasonable juror, right? So you're making a factual argument, this record? Not necessarily, Your Honor. I really believe that under AFCO the Rule 50 motion should have been granted. Rule 50 is both an issue of fact and law. I think AFCO is directly on point because Proskauer was intimately more involved in that issuance of securities than Mr. Trish was here. That's a factual part, but AFCO is the prevailing rule in this circuit. It's not been touched by anybody else. The Supreme Court's not looked at that issue. I do have that Janus case that I cited you. And so let me explain where I was going to go. I've got a minute left of my 15 minutes. The problem for us is we thought this was a 10b-5 case. The jury came back answering 10b-5 interrogatories. Mr. Trish was considered not liable for four of the five. Good. The judge said, well, I'm going to have to withdraw the damage number from each of the verdict forms for them. Then 10 days later, and this is in June of 2011, the judge says he's liable for the entire 40% that the jury had said. But he didn't explain why. So we filed our written 50b motion, arguing 10b-5, AFCO, Stone Ridge, and all those cases. And instead of addressing our arguments in September of 12, 14 months later, the judge says, oh, it's state law, not federal law. So this is the first time we've ever been able to argue state law because the Rule 50 motions were over. And so we've addressed state law, and we think that Solow case, S-O-L-O-W, which we cited extensively, is directly on point as to secondary actors. Mr. Trish was a secondary actor at best. And let's go with, I guess what I'm trying to say, Judge, is we acknowledge Buhler's view of this for purposes of these legal arguments. Even if Buhler said it's correct that he acknowledged concepts, didn't write concepts in three meetings as opposed to 20 with the armament, then that's not enough. That's not enough on any case that I've seen in the last 10 years. And we looked at all of them, as you all have too. I'm sure you've seen every case around on this. So this is where we are. It is a travesty for Mr. Trish to have been held liable given these facts, even if you accept what was said is true. Before you conclude, let me ask a question about Buhler's testimony. Buhler testified, as I understand it, that he reported to Trish every single time he obtained money from an investor. He testified he would not do anything substantial without Trish's blessing. He consulted with Trish about all decisions except day-to-day small things in the operation. During the time he was soliciting investments, Trish and Buhler met with Buhler's loan officer and the president of the bank to discuss restructuring of debt. Trish was a shareholder in the bank, et cetera, et cetera, et cetera. If that's an accurate statement of Buhler's testimony, that's a good testimony of participation, isn't it? Even if that's true and it's not, but even if that's true, that doesn't make Mr. Trish's case hopeless. It doesn't matter. We have to accept it's true. It's evidence because the jury could have based it on it. Well, but again, under the standards that this Court has set forth or the State Second Circuit in Solow set forth, that's still not enough. Buhler also testified that it was his company and Trish didn't own it, and Trish got no money out of any of this. So I'm suggesting to Your Honors that under the legal standards, that's not enough. Pardon me, but I thought that Trish was the owner, a substantial owner of the bank that was a lender in this, that was in the process of being sold or at least offered for sale. And one of the things that would happen to the investor's money is that it was all restructured and went as collateral to the loans of Trish, a liability of that bank which would have impaired its sale by Trish. Now, that's what's stated in the briefs that the evidence is. Is that true or not? To answer, Your Honor, quickly, because I still want my five minutes, is there's a Melder case out there, Fifth Circuit case, that says that mere pecuniary interest alone is not enough. Talk about facts here. The facts are that, well, first of all. Is the one I just read accurate or not? No, it's not accurate. Trish denies most of that. Trish did meet with him because he was loyal to Mrs. Buehler, the then Mrs. Buehler, and to Mrs. Buehler's father. But Buehler so testifies what I'm saying. Well, yes, sir, it's in the record. He also testified that he ran the business and Trish didn't get any money from it. And let's put this in context. First Bank's not a big bank, but it's got several hundred million in assets, and a $350,000 loan is not going to make or break that portfolio. It's just not. And that's just a synapse. And one other point. This is very important. Maybe you should save it for the rebuttal. I'm sorry? I can do it on rebuttal. Or is this in response to this particular question or are you just arguing? Well, I can either way. Maybe just give the point. If I can do it 20 seconds. We filed a motion in limine that the judge didn't rule on prior to the trial. He said we're going to take it up as the evidence is presented. That motion in limine was to exclude all evidence related to First Bank. What the judge ended up doing on a question-by-question basis is allowing some of it in. We believe, and there was a multitude of other litigation between the investors in First Bank over who had primary rights to the collateral. And we believe that all of that was too prejudicial for the jury. The judge let half of it in. Had he ruled against us before the trial, we would have had First Bank people come there and testify. But it became a mishmash, and that was one of our assignments of error.  All right, thank you. Thank you. Mr. Beckner. Good afternoon, Your Honors. Don Beckner for the investors. The problem with the appellant in this case is at the trial court, he never objected to all these issues that he's raised here on appeal. And I know, if you all have read the briefs, he never objected to anything about Louisiana securities laws, nothing. They encouraged the trial judge to not give an instruction on Louisiana securities laws. They encouraged it. Now, in this court, they're saying that that was error, and you should reverse the judgment because the judge didn't do it. The judge didn't do it because they convinced the judge not to do it. But it's not quite that simple because they did take that position, and the district court adhered to it. Then you get back a verdict on 10b-5 with only one interstate commerce connection. A year later, the court says, okay, that's a problem, but we're going to resuscitate the state law claim. That's the other way to look at this. And therefore, he's facing liability and being held liable without the jury ever having been instructed as to the control element. So in that effect, he granted a judgment of a matter of law for you on an element. Right? And in that perspective, we would have to be able to say no reasonable juror could not find that he meets the state law element. That's going to be hard on this record. The verdict form clearly states the jury has asked, Do you find that Wayne Trish misrepresented or failed to state a material fact in connection with the advance of funds to Antique Investment Group, LLC, by the following plaintiffs? And all five plaintiffs, it's checked yes. So that's the only element of the state law claim is just what I read. Failed to state a material fact. Now, I wanted the instruction on the state law claim. I asked for it. But they vehemently argued against it. And for whatever reason, I'm not privy to that. But despite the fact that they did that in the trial court, now they're arguing that they've been prejudiced because they didn't get an instruction. It doesn't seem like to me you can wear both hats at the same time. I think they waived their right to an instruction on the state law security of charge when they objected to it at the charge conference. Now, the charge conference is about 100 pages in the transcript beginning at 4109. And you see where we made suggestions about things about the charge, and they made suggestions, and it was just, as you all know from experience, it was just a question of let's hash this out together and let's see what we really object to. When the charge conference was finished, they didn't object to anything. They didn't enter any objections to anything. To fail to instruct on state law, they didn't object to that. They didn't object to anything. And when the judge would not give them their AFCO proposed jury instruction, they didn't object to that either. And after the judge charged the jury and we had our conference, they didn't object to it then. So almost all of this case, they never objected to in the trial court. And the jury . . . But following that logic, so you have a 10b-5 federal securities fraud case. Then the verdict comes back. Am I right that the only federal liability that would be valid on that verdict would be as to Hecht? It would be a what, Judge? As to Hecht. Because once they say no interstate commerce element as to any of the other plaintiffs, there can't be a claim. I really didn't hear all of you. I'm sorry. The verdict forms a bit unusual, am I right, in that it says that the jury made the finding . . . Maybe I'm wrong about this. When the jury makes the finding of no interstate commerce only as to Hecht, why would you continue to any of the other plaintiffs? Well, the court was clearly wrong in this interstate commerce issue. And I tried as hard as I could over three or four different vehicles, motions. Well, the jury had a question during deliberations about it, right? Right. They come back and say, what do we do? That should be . . . that his decision post-trial, post-verdict, should simply be overturned or it should be reverted back to what the jury found. The jury found violations of 10b-5 . . . You didn't cross-appeal on that. You're arguing it to us. I didn't cross-appeal because they didn't time the appeal. And I didn't know . . . I didn't want to be the appellant. I wanted to be the appellee. I've been around a long time. If you want to win, you've got to solve the plea. Well, I thought I had won the case. I thought your argument was that . . . Sir? I thought your argument was that a finding as to commerce to any one of them would be supportive of all of them. Interstate commerce, it has to affect interstate commerce. The scheme to defraud has to affect interstate commerce. Not that the defendant has to do anything, any act in interstate commerce. In lots of cases, a case in this circuit, Bush v. Buchanan, it was somebody else that had an effect on interstate commerce, affected interstate commerce, not the defendants. And the defendants were still found liable. So the judge, in my opinion, completely missed that. And he says that every defendant has to intersect with every plaintiff to have this interstate commerce nexus. That's just not the law. And I quoted Hazen, and they're the most used treatise by the Supreme Court of the United States. That's not what they say, and it's in the brief here. Wait, I'm sorry. So you say it's not the law. You mean that the verdict would support individual federal fraud violations . . . Yes, sir. . . . against each plaintiff? I believe the verdict form right now, today, supports a 10b-5 violation because where he got off, the judge got off base, I thought, was . . . Do you find that Defendant Wayne Trish used an instrumentality of interstate commerce in connection with the advance of funds to Antique Investment Group? They said yes as to Heck and no to the others. All we needed for proof is one. In fact, even the jury instruction that the judge gave said only one. And I don't know how he came up with this idea. I have no idea. I think it's clearly wrong, and I thought of objecting, Your Honor. And the reason I didn't is because I didn't want to be the appellant, and I thought the case was won, even if it was just on the state charge. So we brought two claims, and we won on both of them in a trial court, and the jury verdict demonstrates that. We won on both of them. And all these facts that Mr. Raynor raised . . . . . . of whether Trish was a seller of securities . . . I'm sorry. You're thinking about him. I just did not hear you. What fact finding do we have of the jury as to whether Trish was a seller or a control person of these securities, either a seller or a controlled seller in these transactions? Well . . . You don't have a jury finding as to that. They don't have an argument, a valid argument, about whether or not Trish was a seller because they never objected to a . . . they never asked for a jury charge, and they objected to the jury charge on state law, which would have given them that charge. If you have an omitted element under Rule 49 of the . . . and it goes to the jury without an objection as to that omission, and the judge enters a judgment on that verdict, the mechanism by which Rule 49 operates rests on the reality that the judgment then is . . . that the judge, by entering the judgment, has himself supplied the requisite finding that was not submitted to the jury. Without that, Rule 49 would not operate, remembering that Rule 49 is a relatively modern pullback from the old general charge. So you go back to the question of whether or not the . . . if the defendant here, if Trish did not, in fact, ask the jury basis we instructed with regard to a controlled person, and they submitted to the jury on that basis, and then the judgment enters . . . the judge enters a verdict on that judgment, then he has implicitly found the missing element himself. In other words, it's deemed tried by the judge. In other words, that's the operating principle. Now, I don't know how it translates here or something else, but that's where . . . that's what . . . the way we interpret verdict. Now, given that principle, where are you? I believe that the . . . that Trish was an agent of Antique Investment Group. Bueller testified that he did everything that Trish told him to do. It's in my brief. He testified to everything that Bueller told him to do. He went to Bueller . . . he went to Trish with everything, and he would take his advice and do whatever he told him to do, including pledge those assets to the bank. I'm not talking . . . directing my question to the sufficiency of the evidence for a moment. What I'm directing my attention to . . . I'm sorry, Judge, I just can't hear you. . . . is that you are making the argument . . . one of the issues here is that this particular verdict does not support the ultimate judgment because there were omitted elements. That's part of the argument here, right? Now, all I'm saying to you is that no one picked . . . argued this, but the law is that in the absence of a request for submission to what is now deemed to have been omitted, the judge is . . . by entering the judgment, if he . . . is deemed to have made any findings that are requisite to support that judgment that's supported by the record himself. Well, I think that the jury found that Mr. Trish had violated both Rules 10b-5, and I don't think that Trish raised the issue of the state law claim anywhere at the appropriate time except in a rebuttal. Now, as I understand the law in this circuit, you can't raise an issue . . . the appellant can't raise an issue for the first time in his reply brief on appeal, and that's when Trish raised this issue of not being a seller and not being a control person. I had no chance to respond to that. My brief had been filed, and I've been in this court before in previous years where this court has refused to entertain arguments that were raised for the first time in a reply brief on appeal by the appellant. And so I don't . . . in my opinion, I don't think the arguments about Trish not being a seller or Trish not being a control are valid arguments. Those arguments have been waived, and we don't really have very much, in my view, that's still at issue today because they either didn't object or they waived it. And . . . Let me ask you a question about Mr. Buhler. You agreed, in exchange for his cooperation at trial and testimony, that you wouldn't enforce a judgment against him. Yes, ma'am. But then after trial, you went in for a joint and several liability ruling, and did you tell Mr. Buhler that even though you wouldn't enforce the judgment against him, you were seeking to collect the full judgment, not just the 40 or 60 percent from Mr. Trish, and that Mr. Trish may have a right to seek contributions from Mr. Buhler? You told him that before his testimony? Yes. I told him he was . . . Did he have a lawyer? No. But you explained that to him? Yes. That he could very well be at risk for his . . . I told him that Mr. Trish would probably sue him on a cross-claim. And Mr. Buhler testified, and he just got up there, and the judge asked me, would you like to make a statement? And he said, I just wanted to get straight with everybody. I messed up, and I just wanted to be honest and tell the truth, and this is what happened. And he knew what he was getting into, and he knew . . . And I just think that Mr. Buhler was contrite and wanted to make amends, and those people, my clients, had lost all their money, all that money on this investment, and there were so many omissions, it's unbelievable. And it's in the brief. I'm not going to bore you with that because I understand that you all have read the briefs.  But the facts are not as Mr. Raynaud presented them to you on the witness stand. I mean, up here at the lectern. For instance, Ms. Golaski, by herself, is sufficient to affirm this judgment. I mean, she just said . . . They were working on the prospectus together, and Trish walks out of Buhler's office, and she's the bookkeeper for Buhler, and he said, had his prospectus in his hand, and said, this is a good document. We're going to raise some money, and we're going to get Ken and them back flush. And then later on she testifies that Trish came back over to Buhler's office and showed me how to prepare the documents to make sure that the inventory bought with the investors' money was pledged to the bank. And Trish is instructing her on how to do that. And Trish is a stockholder and director of the bank. And then after, sometime later, Buhler calls Trish, and they've seized his house now. The bank is reneged, and they've seized Buhler's house. And Trish tells him on the telephone, according to Buhler, that just keep this thing quiet, let's not rock the boat, because I stand to make a lot of money when this sale of this bank goes through. And the whole record, as I've tried to put it in my brief, permeates with evidence of more than a reasonable doubt, I would say, if it was a criminal case, that Mr. Trish's actions constitute a violation of the Louisiana Securities Act and Rule 10b-5. And most of Mr. Reno's argument that he made here today dealt only with the federal office, the Rule 10b-5 office. He made very little argument about the state law claim. And they just took the position that the state law claim wasn't there. And then, like I said, in rebuttal, in reply memo, is when they raised the issue that, hey, Trish wasn't a seller. I believe in Louisiana law he was a seller, because he was an agent of American Investor Group. He was their agent. He was the one that told DeArmond, his employee, to go write this prospectus. He told DeArmond to do it. And DeArmond did it, and testified that he did it. And Trish called the shots. He was a fantastic businessman, and he called the shots in this case, and DeArmond did everything he was told to do, and Beulah did everything that Trish told him to do. Am I saying my question right? Any questions, Mr. Cornell? I think we've got your argument. Thank you. Ma'am? We have your argument. Thank you. Thank you very much. You're welcome. Mr. Ray, now you have a few minutes. Yes, ma'am. As with this record in the trial below, and then before that on the summary judgment motion, I don't know where to begin. A lot of what Mr. Beckner just talked about was actually stricken from the record by the judge. This goes back to one of our assignments of error, which was motion in limine to exclude all that first bank stuff, because it had nothing to do with the offering of the security. It's after the fact. Okay? It's after the fact, and there was no evidence, no evidence that Mr. Trish received one nickel from any of this. Control person. Control person under state statute. Control is defined as the possession of direct or indirect of the power to direct or cause the direction of management and policies of a person, whether through ownership, voting securities, or by contract or otherwise. There's no evidence other than Mr. Trish was a not-paid advisor, and you can go through the detail of this, and I ask the court to do that because there's insufficient evidence to show from the record that Mr. Trish had anything, any control over the activities of AIG. Concepts. That's Mr. Bueller's word. Concepts. No writing, two pages, which were the business points, not the suggestions and omissions and other things about Mr. Bueller's life. No control. There's no evidence of control. The issue of seller, and this is really probably the most frustrating part. I'm sorry. That the seller of these securities was on the verge of bankruptcy, that his license to auction, which was his primary business, which was absolutely necessary to the business he was performing, had been suspended. In other words, there's no way that you could complete this transaction. That was the evidence. But Mr. Trish didn't write that. I'm sorry? Mr. Trish did not write that. Mr. Bueller said Trish didn't write that. Trish knew that. Does he have control over? Again, we disagree that he knew that. This is the way one can read this record, that you may have read it, is this is an individual who is counseling him to sell and to gain investor money, and the evidence is that every time he solicited the money, he got money, he called him back and told him what he had done, and the guy said, Great, you're doing well. That money is coming in for what purpose? It's to open an antique auction operation, which he has no license to do  That's not what Mr. Bueller did, but there's no evidence that Trish helped write that. And importantly, under AAFCO, Your Honor, as you well know because you were on the panel, there's no attribution to Trish, therefore no reliance in the prospectus. There is no reliance on Trish. Four of them didn't even know about Trish. Your liability is not resting under the Section 12 liability for misstatement of prospectus. It is the obligation that stems from you as a seller or a buyer of security under Act Rule 10b-5. It's a law. Well, again, Mr. Trish owned no part of AIG. He had no control over AIG, and the seller was AIG. There is no evidence at all that Mr. Trish had any control over AIG. And if you look at the case law, whether it's Salo, the state court, and I will say this, the seller issue is the same for 10b-5 as it is under state law. That's really not an issue. The seller is AIG, and Mr. Trish had no control under the prevailing jurisprudence, if you take everything Bueller said as true. Well, the trouble is the closing argument was all about this. I mean, at the moment where he characterized the evidence as having had written it, that's the big sidebar, and you disputed heavily that. One answer is we're just reviewing to see if there is or isn't evidence of writing in control. Another answer is, well, there is no jury finding on it. The judge made the finding. Their response is, but you precluded the jury from finding it. You explicitly said we don't want a finding on control. Well, let me just address that. We argued that there is no testimony about Mr. Trish's writing. In fact, Bueller said he contributed concepts. And every time Mr. Beckman used to say that. But don't re-argue that. That's clear you argued that. And the record will be. I'm arguing it now because he said writing again, both in his brief and morally here. I know, but that's a difficult standard to achieve. So now let's say, what about the second point? And should you repeat the second point? The second point is you're arguing to us now that there isn't a finding, a finding of fact as to control. No, I'm really not. What I'm trying to argue is that either under 10b-5 and state law, which we addressed in our first brief, there is insufficient evidence to support a finding against Mr. Trish. I'm talking substantive law based upon the record, even if you accept what Bueller says is true, because under AAFCO in federal law and under SALO in state law, Mr. Trish should not be liable. And I believe to hold otherwise would be inconsistent with those decisions. That's the bottom line. That's the bottom line. That's your argument. It is not that the judge supplied some additional element that state law requires. No, the judge, I think he just messed up. I'm sorry, but I think that he realized, I think you articulated it very well, Judge. He realized that he had messed up on the jury instructions or the jury verdict for him. And so to correct it, he went to state law for the first time. That's why we had to argue state law here. The issue is not whether we objected or not. The issue is we were surprised that the judge switched to state law unilaterally without any briefing from either side. So we get to present it to you. The good news for us is that we win under state law or federal law, under AAFCO or SALO. All right. Thank you. Thank you. Heavy argument. We'll recess until 9 o'clock tomorrow morning.